IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROBERT JAMES HENRY | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:10-CV-00693-LY |
| | § | |
| CITY OF TAYLOR, TEXAS, TERRY DECHIARA, ANTHONY MOREHOUSE JOSEPH BRANSON | §<br>§<br>§ | |

**MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Defendants, City of Taylor, Texas, Terry Dechiara, Anthony Morehouse and Joseph Branson, by and through their attorney of record, and file this their Motion for Summary Judgment, and would show unto the Court as follows:

**I.**

**Statement of the Case**

Plaintiff Robert James Henry has filed this lawsuit alleging that these Defendants deprived Robert Henry of his constitutional rights guaranteed by the Fourth Amendment of the United States Constitution. Specifically, Plaintiff argues that the City of Taylor Defendants' conduct, collectively, was unreasonably excessive force to arrest the Plaintiff. (Plaintiff's Original Complaint, hereinafter "OC"). Plaintiff also sues the City of Taylor for an unconstitutional policy or custom of inadequate training, supervision and discipline as well as ratifying the use of force. (OC ¶21)

## II.

## Factual Background

For purposes of this summary judgment, the following factual assertions of the Plaintiff's complaint are assumed to be true.[1]:

Robert Henry is a 60-year-old man who lives in Taylor Texas. (OC ¶10). Mr. Henry has been diagnosed with a mental health condition. (OC ¶10)[2]. During the last several years, Rev. Henry has been the subject of multiple calls for service to the Taylor Police Department and the crisis intervention team of deputies from the Williamson County Sheriff's Department. (Ex. G, Ex. H p. 26-33, Ex. F, Ex. I). Some of these interventions have been because family, friends, and neighbors have expressed fear about Mr. Henry. (Ex. I Depo excerpts of Cornelius Henry p. 29-97 and Exhibits). One such contact involved an arrest by the City of Taylor PD when Rev. Henry failed to appear for a hearing in court. This court heard and dismissed that matter. (*Reverend Robert Henry vs. City of Taylor, Texas, et al.;* Civil Action No. A06:CA 1007LY*)*. That case was affirmed by the Fifth Circuit.

The specific case at issue here concerns an incident that occurred September 22, 2008. On that date, a Williamson County Constable went to Rev. Henry's home to serve warrants on him. (Ex. A). Rev. Henry called the Taylor Police Department telling them there was a disturbance. (Ex. A ¶3). Officers from Taylor PD responded to this call. (Ex. A). Rev. Henry refused to come to the door. (Ex. A ¶3). After trying to get cooperation from him and custody over him, the officers decided to leave Mr. Henry's home and have the warrants served later because they knew Rev. Henry would probably not come outside. (Ex. A, Ex. B p. 15-17).

---

[1] These assumptions are made solely for the purposes of this summary judgment and may be subject to dispute if proceedings continue.

[2] Plaintiff has been diagnosed with a mental illness. (Plaintiff's Depo p. 36; Ex. D).

Additionally, the officers hoped Rev. Henry's brother might be able to help get him to go to the court. (Ex. B p. 17).

Later that morning, the Taylor PD received a call from neighbors of Mr. Henry complaining of a threat to their property by Henry. It was reported that Mr. Henry had told his neighbors that the business might burn down. (Ex. A Attachment B – D, Ex. B p. 19-22, Ex. C). As the officers walked into the business, they saw an individual with a rifle who was planning to defend himself from Rev. Henry. (Ex. A ¶5, Ex. B p.19-22). The officers waited outside for Mr. Henry to come out of his house. (Ex. A ¶5-6, Ex. B p. 27 – p. 28 l. 7 and Ex. C). The officers planned to wait until Mr. Henry got far enough away from his house that they could catch him. (Ex. A, Ex. B p. 27 – p. 28 l. 7 and Ex. C). Finally, Rev. Henry came into the street, turned his back to the officers and began to "moon them." (Ex. A, Ex. B. p. 28 and Ex. C). At this juncture, Sgt. Dechiara told the other officers to get Rev. Henry. (Ex. A ¶6). They rushed him, when he realized they were coming towards him, Rev. Henry turned to pull up his shorts and run back to the home but fell as Officer Morehouse grabbed him. (Ex. A ¶6, Ex. B p. 30-32 and Ex. C). He claims that his arm was injured when he fell on it. (Ex. D-Plaintiff's Depo p. 59-60).

The officers handcuffed Mr. Henry and he was taken into custody. (Ex. A, Ex. B p. 32-33 and Ex. C). Ultimately, he was taken to the Williamson County Jail where he was jailed. (Ex. A).

## III.

## Summary Judgment Standard

Summary judgment should be granted when the moving party shows there is no genuine issue of material fact and is entitled to judgment as a matter of law. *Speaks v. Triodora Lloyd P.T.*, 838 F.2d 1436, 1438-39 (5th Cir. 1988). Fed. R. Civ. P. 56(c). The evidence presented is

reviewed in the light most favorable to the non-moving party only if there is a genuine dispute as to those facts. *Scott v. Harris*, 127 S.Ct. 1769 (2007). When it appears from the entire record that there is no genuine issue of material fact; and the record taken as a whole could not lead a rational trier of fact to find for that party, the moving party is entitled to a judgment as a matter of law. *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996); *See e.g.*, *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986) (purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial). This standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the Court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Further, to be entitled to summary judgment as a matter of law, a defendant need not refute the plaintiff's claims, but need only show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986). A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial, therefore, there can be no genuine issue of material fact. *Id.* at 2552.

Rule 56(c) of the Federal Rules of Civil Procedure, by its very terms, permits summary judgment even if the parties disagree as to some of the facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 242, 248, 106 S. Ct. 2505, 2510 (1986). More specifically, summary judgment is precluded only if the disputed facts "might affect the outcome of the suit under the governing law" and if the dispute is genuine. *Id.*

## IV.

## Summary Judgment Evidence

The summary judgment evidence consists of the following:

1. Affidavit and attachments of Defendant Terry Dechiara (Exhibit "A");
2. Defendant Anthony Morehouse deposition (Exhibit "B");
3. Affidavit and attachments of Defendant Joseph Branson (Exhibit "C");
4. Plaintiff's deposition (Exhibit "D");
5. Affidavit and attachments of Deputy Chief Dan Ramsey (Exhibit "E");
6. Various incident reports regarding Robert Henry (Exhibit "F");
7. Incident reports of Robert Henry from Williamson County Sheriff (Exhibit "G");
8. Deposition of Williamson County Deputy Sheriff Javier Melendez of Williamson County (Exhibit "H");
9. Excerpts of deposition of Cornelius Henry (Exhibit "I"); and
10. TCLEOSE records of Officer Anthony Morehouse (Exhibit "J").

This evidence shows that the actions of Officers Dechiara, Morehouse and Branson were reasonable at that time and place considering the circumstances they confronted. Additionally, Plaintiff has not and cannot establish a constitutional claim against the City.

Accordingly, the Court should grant Defendants' Motion for Summary Judgment.

## V.

## Argument and Authorities

### A. Claims Against Individual Defendants Dechiara, Morehouse and Branson Fail Because Plaintiff's Claims Do Not Rise to the Level of a Constitutional Violation and Because They Are Protected by Qualified Immunity.

1. **Plaintiff Fails to State a Claim That Rises to the Level of a Constitutional Violation that these Defendants' Use of Force Violated the Fourth Amendment.**

A claim that a law enforcement officer used excessive force in the course of an arrest is analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 286, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Whether the event gives rise to a constitutional violation, rests on whether the actions of the officer are "objectively reasonable" in light of the facts confronting them. *Graham* at 397, *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999).

In the present action, the facts do not show the violation of a constitutional right because none of the officers acted objectively unreasonable under the circumstances. Absent violation of a constitutional right, Plaintiff's case fails. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *Pearson v. Callahan,* 129 S.Ct. 808 (2009).

Henry's complaint at base is that the named individual defendants waited outside his home in hiding, and with no notice ambushed and tackled him when he went to his mailbox. (Ex. D-Plaintiff's Depo p. 54). All of this adds up to an unconstitutional act of excessive force without any legal justification, he maintains. He further claims that he sustained injury when taken to the ground by the defendants. (Ex. D-Plaintiff's Depo p. 59-60). Henry may argue that the defendants could have gotten between him and the door to his house when he came outside or simply waited until he left the house to effect the arrest. With the benefit of 20/20 hindsight, many different scenarios can be considered. However, the constitutional requirement is not whether other strategies might have been reasonable or not. Rather, the proper constitutional inquiry is whether the actions of the officers at that moment were objectively reasonable. *Graham* at 397. Mere negligence is not a constitutional violation. *Davidson v. Cannon*, 106 S.Ct. 668, 670 (1986).

At the time of this incident, the City of Taylor officers had been called to the scene twice that day. The first time because Mr. Henry made a disturbance saying that someone wearing stars on their shirts were trying to take him away. (Ex. A, Ex. B p. 13). Those people were Williamson County Constables attempting to serve warrants on him. (Ex. A, Ex. B p. 13). When the Taylor officers arrived, they knocked on the door and asked Rev. Henry to open up so they could serve the outstanding warrants. (Ex. A ¶3 and Ex. B p. 16-17). He would not open the door but would turn his radio up loud. (Ex. B p. 17). Officer Morehouse then hid on the side of Henry's house waiting for him to come outside planning to run behind him and keep him from running back into the house to avoid being taken into custody. (Ex. B p. 16-17). He did this at least twice, but Henry ran back inside before he could get to him. (Ex. B p 16-17). Finally, the officers decided to leave and serve the warrants later when Henry was in town or with the help of his brother, who might be able to persuade him to turn himself in to the court to handle the warrants. (Ex. A, Ex. B p. 17).

The second time officer Morehouse, Branson and Dechiara came to the scene was later that morning for a terrorist threat by Henry to burn down his neighbors business. (Ex. A, Ex. B p. 19-22 and Ex. C). Sgt. Dechiara had responded to many calls involving Henry during his years of service. (Ex. A). His efforts to engage him on this occasion were not successful. On this occasion, these officers recognized that with the new terrorist threat complaint they had to take Henry into custody, to protect him as well as the neighbors. (Ex. A). They also knew that it was not likely he would come outside if they knocked on the door. So they decided to wait outside on the street, hoping he would come far enough toward them so that they could run and grab him or get between him and his house. (Ex. A, Ex. B p. 27-28 l. 7). This is what they did and when the officers saw him turn his back and bend over to moon them, the opportunity to

catch him and take him into custody seemed present. So, the officers rushed him with officer Morehouse getting to him first, grabbing him and falling to the ground with him. (Ex. A, Ex. B p. 30-32 and Ex. C). Then he was handcuffed and taken to the Taylor Police station and held until transported to the Williamson County Jail.

These actions were not objectively unreasonable and don't rise to the level of a violation of the 4th amendment. Thus, the claims should be dismissed.

**2. <u>Individual Defendants Are Entitled to Qualified Immunity</u>.**

As public officials exercising discretionary functions, these individual Defendants are shielded from suit and from liability by qualified immunity, unless a plaintiff can show that the constitutional rights the defendants are accused of violating were clearly established such that it would be clear to a reasonable officer that his specific conduct was not proper at the time of the alleged offenses. *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct 2727, 2732 (1982); *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir.)

When a §1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, "the plaintiff then has the burden 'to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (*citing Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)).

Officers like these defendants are not entitled to qualified immunity if, at the time the challenged action occurred, the federal law proscribing it was clearly established not only as an abstract matter but also in a more particularized sense such that a reasonable official would understand that what he specifically did violates that right. *Branton v. City of Dallas*, 272 F.3d 730, 744 (5th Cir. 2001). *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998).

The Supreme Court intended that qualified immunity should be granted to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Braggs*, 475 U.S. 335 341 (1986). Unless no reasonable, similarly situated defendant could have considered the conduct of the defendant to be lawful, under the circumstances, qualified immunity applies and dismissal of the individuals, in their individual capacities is appropriate. *Anderson v. Creighton*, 438 U.S. 635 640-41 (1987). If reasonable public officials could differ on the lawfulness of the defendants' actions, they are entitled to qualified immunity. *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994).

Until recently, a claim of qualified immunity required the trial court to engage in a two-step inquiry. *Savier v. Katz*, 533 U.S. 194 (2001); *Simmons v. City of Paris, Texas*, 378 F.3d 476, 479 (5th Cir. 2004); *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998). Initially, the district court was called to determine whether a public official's conduct truly deprived the Plaintiff of a constitutional or statutory right. *Sanchez*, 139 F.3d at 466. If the first inquiry is satisfied, then the court is asked to determine whether the Defendants' conduct was "objectively reasonable" in light of clearly established law at the time the challenged conduct occurred. *Id.* at 467.

In considering this two-step qualified immunity inquiry, the court is now free to take either step first. *Pearson v. Callahan*, 129 S.St. 808 (2009). If there is insufficient evidence to show that Henry's constitutional right to be free from excessive force was not violated, then the claim fails. If there was, then the court will consider the objective reasonableness of the defendants.

As noted in *Saucier*, if an officer is reasonably mistaken about what amount of force the facts suggested necessary or the relevant law entitled him to use he is entitled to qualified

immunity. *Saucier v. Katz*, 121 S.Ct. 2158-59. Thus, even if material facts are disputed, summary judgment on qualified immunity is still proper if the officers' mistake of law or fact is reasonable. *See eg*: *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1949 (9th Cir. 2002).

In making this analysis, the court should view the totality of the circumstances from the standpoint of a reasonable officer on the scene. *Stroik v. Poinsettia*, 35 F.3d 155, 157050-158 (5th Cir. 1994), *cert. denied*, 514 U.S. 1064. None of the actions of these Defendants constituted an objectively unreasonable use of force within the meaning of those terms in the light of the facts and circumstances confronting these officers at the time of their actions. Here, the proper analysis of the summary judgment evidence establishes that the action of Officers Dechiara, Morehouse and Branson were objectively reasonable and they should be entitled to a defense of qualified immunity for their actions. (Ex. A-E).

**A. <u>Sgt. Terry Dechiara</u>**

On the date of the incident, Sgt. Dechiara responded twice to Rev. Henry's home. (Ex. A). The second time he returned to the property, it was for reports of threats by Rev. Henry relayed to him by the neighboring property owners. (Ex. A). In fact, the employees of Terry's Body Shop were so concerned one of them had retrieved a firearm from his vehicle to protect himself. (Ex. A). Dechiara told him to take the gun and put it back in his car or he would be arrested. (Ex. A).

Next, Sgt. Dechiara met with the assembled officers from the Taylor Police Department next to Mr. Henry's home. (Ex. A, Ex. B p. 27-28 l. 7 and Ex. C). From previous experience with Rev. Henry, he hoped that if they ignored him he would come far enough out of the house that they could intercept him before he ran back into his home. (Ex. A). Rev. Henry came to the middle of the street in front of his home, turned his back to the officers, dropped his drawers and

began to moon them. (Ex. A, Ex. B p. 28 and Ex. C). At that moment, Sgt. Dechiara told the officers to get Rev. Henry. (Ex. A ¶6). Officers Branson and Morehouse ran to grab Rev. Henry. (Ex. B p. 30-32 and Ex. C). On this occasion, as the officers ran towards him, Rev. Henry tried to pull up his pants to run back into the house. (Ex. A ¶6, Ex. B p. 30-32 and Ex. C ¶3). He fell to the ground as Officer Morehouse grabbed him. (Ex. A, Ex. B p. 30-32 and Ex. C). At this point, Sgt. Dechiara instructed the officers to handcuff Rev. Henry, put him in a patrol car, and take him to the police station.

**B. Officer Joe Branson**

On the date of the incident in question, Officer Joe Branson responded to the dispatch about a terroristic threat. (Ex. C). He arrived on the scene and after talking to witnesses at Terry's Body Shop, met with Sgt. Dechiara. (Ex. C). Sgt. Dechiara explained that they should wait until Rev. Henry got far enough from his house that they could reach him before he could get back inside his house. (Ex. A ¶5). Accordingly, the officers ignored Rev. Henry. (Ex. C). Then, Rev. Henry turned his back to the officers and began to pull down his shorts in the middle of the street. (Ex. A, Ex. B p. 30-32 and Ex. C). At this point, Sgt. Dechiara instructed the officers to get him. (Ex. A). The officers ran towards Rev. Henry who turned to run, tripped over his pants, and as Officer Morehouse grabbed him, they fell down. (Ex. B p. 30-32). The officers then handcuffed Rev. Henry and he was transported to the police station. (Ex. A).

**C. Officer Tony Morehouse**

On the date of the incident in question, Officer Tony Morehouse responded twice to the scene. The second time was because of a dispatch about a terroristic threat. (Ex. B p. 19-22). He arrived on the scene and after talking to witnesses at Terry's Body Shop, met with Sgt. Dechiara and Corporal Branson. (Ex. B p. 27-28). Sgt. Dechiara explained that they should wait

until Rev. Henry got so far from his house that they could run and catch him before he reached his house. (Ex. A ¶5). Accordingly, the officers ignored Rev. Henry. (Ex. B p. 28 and Ex. C). Then, Rev. Henry turned his back to the officers and began to pull down his shorts at them in the middle of the street. (Ex. A, Ex. B p. 28 and Ex. C). At this point, Sgt. Dechiara instructed the officers to get him. (Ex. A). The officers ran toward Rev. Henry who turned to run, tripped over his pants, and fell as Officer Morehouse grabbed him. Officer Morehouse also fell to the ground. (Ex. B p. 30-32). The officers then handcuffed Rev. Henry and he was transported to the police station. (Ex. A).

The force used was objectively reasonable and this motion should be granted.

## VI.

## Summary of the Argument

### A. The City of Taylor Has No Liability for Plaintiff's Claims on Facts Here.

#### 1. No Constitutional Right Violated.

In order to hold a unit of government like the City of Taylor, liable for a Constitutional rights claim under §1983 for the misconduct of one of its employees, the Plaintiff must first show that a constitutional right was violated. *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir.), *cert. denied*, 118 S.Ct. 82 (1997). The lack of a constitutional violation by any employee in this case proves fatal to Plaintiffs' Fourth Amendment claims against the city. *Los Angeles v. Heller*, 475 U.S. 796, 798-799 (1986). For a full explanation of why claims fail against the officers, see section V above.

Subsequent to *Heller*, different circuits have offered differing interpretations on when an individual defendants' immunity may defeat municipal liability. In *Brown v. Lyford*, 243 F.3d 185 (5th Cir. 2001), Justice Higginbotham interpreted *Heller* to mean that if the plaintiff does not

show any violation of his constitutional rights by the individual defendant, then there exists no liability to pass through to the unit of government. *Id.* at 191. The Eighth Circuit has interpreted *Heller* to mean that the municipality has no liability if there is no constitutional violation by the individual defendant. *Abbott v. City of Crocker*, 30 F.3d 994 (8th Cir. 1994); *Praprotnik v. St. Louis*, 798 F.2d 1168, FN3 (8th Cir. 1986). Similarly, the Sixth Circuit determined that *Heller* means there are no grounds upon which to impose liability on a municipality unless there is a constitutional injury by the individual defendant. *Doe v. Sullivan County, Tennessee*, 956 F.2d 545, 553 (6th Cir. 1992).

Similarly, in *Mace v. City of Palestine*, the Fifth Circuit determined that where an individual defendant's use of force was not objectively unreasonable and he is entitled to qualified immunity, the city was entitled to summary judgment for *Monell* claims. 333 F.3d 621, 625 (5th Cir. 2003).

In two recent opinions a federal district court in the Northern District and Western District of Texas found the individual defendants to be entitled to qualified immunity and determined there was no municipal liability, citing to *Heller*. *Troy Willmon v. Daniel and City of Waxahachie*, 2006 WL 168 3425 (N.D. Tex.); *Hale v. Bexar Co.*, 2008 WL 2967513 (W.D. Tex.)

As this authority establishes, the Plaintiffs' claims against the City are barred because no individual defendant violated Williams' constitutional rights.

**2. <u>No Evidence a City Policy Was a Cause in Fact of Plaintiff's Injury or that City Acted With Deliberate Indifference to Plaintiff's Constitutional Rights</u>.**

Assuming arguendo that there was a constitutional violation by an individual Defendant present in this case, the City can be liable only if it also caused a constitutional violation. *Monell*

*v. Dept. of Social Services*, 436 U.S. 658 (1978). In order to hold the City liable under §1983 for that misconduct, a plaintiff must establish that an official policy or custom "was a cause in fact of the deprivation of rights inflicted." *Board of County Comm'rs v. Brown*, 520 U.S. 397 (1997), *Breaux v. City of* Garland, 205 F.3d 150,161 (5th Cir. 2000), *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). Plaintiff must also demonstrate that the city policy makers acted with deliberate indifference to Rev. Henry's constitutional rights. *Hare v. City of Corinth*, 74 F.3d 633, 649 n. 4 (5th Cir. 1996).

In order to satisfy the cause in fact requirement, a plaintiff must establish that the custom or policy was the "moving force" behind the constitutional violation at issue or that the injuries resulted from the execution of the official policy or custom. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215-16 (5th Cir. 1998), *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Commissioner of Bryan County, Oklahoma v. Brown*, 117 S.Ct. 1382, 1388 (1997). Or, as the Supreme Court most recently articulated, "To satisfy the statute [§1993], a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference' to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. ___ (2011) (citing *Canton*, 489 U.S. at 388). The required degree of culpability is "deliberate indifference" to the actual harms caused by the policy.

Properly understood, the policy complaints against Taylor here are more precisely a failure to have policies. But, a municipality may be held liable under §1983 for failing to adopt a policy only when that failure rises to the level of "deliberate indifference" to the need for such a

policy. Under this test, a governmental entity can be held liable if, in the light of the duties assigned to specific officers or employees, the need for such a policy is so obvious, and the absence of such a policy so likely to result to violations of constitutional rights, that the governmental entities' policymakers can reasonably be said to have been "deliberately indifferent" to the need for the policy. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Indeed, mere negligence by policymakers in the face of unconstitutional behavior by municipal employees is insufficient itself to establish municipal liability under §1983. *Johnson v. Deep E. Tex. Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004), *Doe v. Dallas Independent School District*, 153 F.3d 211, 217 (5th Cir. 1998). In this action, there is no evidence the City of Taylor was deliberately indifferent to a need for the policies Plaintiffs assert may have been required or that the absence of such policies was a moving force behind the alleged constitutional violation. Summary Judgment for the City is proper in these circumstances.

Here, the allegations of the cities liability contained in Plaintiffs' pleadings do not meet the requirements that the city was deliberately indifferent to the precise harm Henry claims. Nor is there any proof that a policy directly caused a constitutional violation. Therefore, Plaintiff has failed to properly allege and prove a claim against the city and the claims should be dismissed. *See: Celotex*, 477 U.S. at 325.

**3. Failure to Train Claims Also Fail.**

At the outset, it must be noted that the involved City of Taylor officers were all licensed peace officers, and all had valid TCLEOSE certificates at the time of the incident. (Ex. A, Ex. B p. 9-11, Ex. C and Ex. J). There is no evidence that the City of Taylor officers sued in this case were trained any less than what is required by law, that there has been a pattern of similar

incidents involving these officers or the City of Taylor, or that the City of Taylor's alleged failure to train reflects a deliberate or conscious choice to endanger the constitutional rights of citizens. Accordingly, the Plaintiff's claims for inadequate training against the City should be dismissed. *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998), *Benevides v. County of Wilson,* 955 F.2d 968, 973 (5th Cir. 1992) (Because jailers were certified, plaintiff must show that this legal minimum of training was inadequate to enable the deputies to deal with recurring situations faced by jailers and peace officers); *Huong v. City of Port Arthur*, 961 F.Supp. 103 (E.D. Tex. 1997); *Davis v. Montgomery County*, 2009 W.L. 1226904 (S.D. Tex. 2009).

The summary judgment proof contained in Exhibits "A", "B", "C" and "J" establishes that each of the City of Taylor officers sued here were properly licensed by the State of Texas at all relevant dates, and were in fact well trained law enforcement officers. Tex. Occupations Code §1701.051. As noted, the Fifth Circuit has held that if a law enforcement department meets the state standards for the training of its law enforcements officers, the Plaintiff cannot ordinarily sustain a failure to train cause of action under 42 U.S.C. § 1983. *See, Gonzales v. Westbrook*, 118 F. Supp. 2nd 728 (W.D. Tex. 2000); *Conner v. Travis County*, 209 F.3d 794, 798 (5th Cir. 2000); *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992), cert. denied, 506 U.S. 824, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992); and *Huong v. City of Port Arthur*, 961 F. Supp. 103, 107 (E.D. Tex. 1997). Accordingly, the Court should dismiss Plaintiff's failure to train claims.

**4. <u>No Claim for Failure to Supervise or Discipline</u>.**

Under section 1983, supervisory officials and units of government are not liable for the actions of subordinates on any theory of vicarious liability. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). A failure to supervise is evaluated as a failure to train. *Davis v. City of*

*North Richland* Hills, 406 F.3d 375, 381 (5th Cir. 2001). A supervisor who is not personally involved in the acts that deprived the Plaintiff of his constitutional rights is liable under section 1983 for this claim only if: 1) the supervisor failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's right; and 3) the failure to train or supervise constituted deliberate indifference to the Plaintiff's constitutional rights. *Smith v. Brenoettsy*, 158 F.3d 908, 911-12, (5th Cir. 1998); *Doe v. Taylor Independent School District*, 15 F.3d 443, 452-54 & nn.7-8 (5th Cir. 1994) (en banc) adopting *The City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 1205 n.10, 103 L.Ed. 2d 412 (1989).

Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is also normally required before such lack of raining or supervision constitutes deliberate indifference. *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003); *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998); *Belt*, 828 F.2d at 304-305. The Plaintiff must generally demonstrate at least a pattern of similar violations. *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000), *Snyder*, 142 F.3d at 798. Furthermore, the inadequacy of training must be obvious and obviously likely to result in a constitutional violation. *City of Canton*, 109 S.Ct. at 1205 n.10 (1989).

In the present action, the Plaintiff points to three cases as a pattern of excessive force by the City of Taylor. These three cases cover a span of over seven years. Yet, of these cases, the *Turner v. Taylor* case was dismissed by the Court. (Ex. E ¶2 Attachment A). Another, *Tealer,* occurred in 2002 and was dismissed by the plaintiff. (Ex. E ¶2 Attachment B). The third case occurred in 2004 but did not involve any of the officers in this case. (Ex. E ¶2 Attachment C). Three claims over seven years that are not even similar, does not show a

pattern as legally required for a constitutional violation. *See Peterson v. Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (twenty-seven claims of excessive force in three-year period did not show policy condoning excessive force), *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984) cert. denied 472 U.S. 1016 (1985).

Based upon the formal policies adopted by the department related to the use of force, it cannot be said that the City was indifferent to the conduct of its officers regarding the use of force. Here too, there are no other complaints of excessive force against these officers. (Ex. A, Ex. B p. 10-11 and Ex. C). In the absence of proof of a repeated pattern of misconduct, specifically known of and tolerated by the department, the Plaintiff cannot establish a viable cause of action for an alleged failure to supervise, train or for a ratification of any such unconstitutional policy. (Ex. E). *Davis v. City of North Richland Hills*, 406 F.3d 375 (5th Cir. 2005).

## VIII.

## Conclusion

The summary judgment evidence establishes that there is no liability on the part of these defendants for any of Plaintiff's claims. This summary judgment should be granted.

## Prayer

Defendants pray the Court grant this Motion in whole or in part and for such other relief at law or equity to which they may be entitled.

Respectfully submitted,

WRIGHT & GREENHILL, P.C.
221 West 6th Street, Suite 1800
Austin, Texas 78701
512/476-4600
512/476-5382 (Fax)

By: Mike Thompson
Archie Carl Pierce
State Bar No. 15991500
Mike Thompson, Jr.
State Bar. No. 19898200

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of August 2011, I electronically filed the foregoing pleading with the clerk of the court using the CM/ECF System, and a true and correct copy has been sent by facsimile to the following counsel:

Donna Hall Keith
605 W. Oltorf Street
Austin, TX 78704
512-743-6064
512-447-1475 fax
State Bar No. 00789335
ATTORNEY FOR PLAINTIFF

Mike Thompson
~~Archie Carl Pierce~~
Mike Thompson